Mike Eugene KELLY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13780.

Court of Criminal Appeals of Oklahoma.

June 1, 1966.

Lewis E. Darrell, Oklahoma City, for plaintiff in error on appeal. Wayne Hagle, Oklahoma City, representing defendant at trial.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in Error, Mike Eugene Kelly, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County with Possession of Marijuana. He was tried by a jury, found guilty, and sentenced to Seven Years in the penitentiary. From that judgment and sentence he now appeals to this Court contending several assignments of error.

Defendant and two other boys checked into the Ramada Inn on the afternoon of July 18, 1964, each one registering for a separate room. Paul Determan, employed at the motel, testified that all three registered under ficticious names, and that the one called Sims, who registered for room 314, was the defendant. He testified that on July 19, 1964, there was a disturbance on the third floor—one of the three men went into the room where one the maids was working and caused some trouble. That he observed the defendant on the third floor ramp going back to his own room, walking like he was "on a cloud or drunk." He stated that he was Assistant Manager, and therefore responsible for the motel during the absence of the Manager. He then

walked up to the third floor, and stated he could smell a sweet odor coming out of 312 and 314, which he recognized as marijuana. He stated he then called the police and they came out. He gave the officers his pass-key about 7:00 p. m. that evening. The officers testified, in substance, that they then went up to the rooms, and no one answered in 314 or 311, but they found two people in room 312. Three of the officers stayed there with these two men until Officer Swindler went to town to obtain a search warrant. When he returned, with the warrant, they searched all three rooms, and in 314 they found a penny match box containing marijuana hid in the Kleenex dispenser in the bathroom; two hand-rolled marijuana cigarette butts in the ashtray on the dresser; and another penny match box containing vegetable matter (marijuana) under the mattress. Two of the officers then took the two occupants of the other room to the police station, and two remained in 314 for the occupants to return. Twenty or thirty minutes later, defendant and another man returned. He was asked his name and he told them "Sims"; he stated that he was the occupant of the room, and was placed under arrest.

Defendant's first contention of error is that the trial court permitted the jury to consider inadmissible evidence. He objects to the testimony concerning a disturbance at the motel by Mr. Determan, which prompted him to call the police. His testimony relates that the defendant was not *entirely* nor directly involved in each and every act of the disturbance, but was involved in the general disturbance. His testimony concerning defendant walking and running up on the third floor ramp was one circumstance of the disturbance.

■ This testimony of Mr. Determan concerning the acts, transactions, and occurences of the defendant before his arrest was relevant to the issues, and was not so remote as to make it inadmissible; and does not constitute reversible error.

Defendant's second proposition is that the evidence obtained by reason of the search warrant was improperly procured, and that said search warrant was not procured by oath or affidavit.

■ This Court held in the case of Hendrix v. State, 82 Okl.Cr. 105, 166 P.2d 785:

"Motion to suppress the evidence is the proper procedure to test the validity of a search warrant."

Where counsel learns from questioning of client prior to trial that evidence has been illegally obtained, he should file motion to suppress, and support motion by evidence, so as to obtain determination of question before jury becomes aware of such evidence. Art. II, § 30, U.S.C.A.Const. Amend. 4; Sanders v. State, Okl.Cr. 287 P.2d 458.

■ In the event counsel is not aware of this fact, (which hardly seems likely as defendant was charged with *Possession* of Marijuana) and fails to file and present a Motion to Suppress evidence prior to the trial, he should interpose an objection to the introduction of any evidence concerning the marijuana at the first opportunity presented at the trial, on the grounds that it was obtained by illegal search warrant, otherwise the right to object to such evidence is deemed waived. Fulbright v. State, 96 Okl.Cr. 36, 248 P.2d 651.

■ There was an abundance of testimony concerning the search warrant and the marijuana found before defense counsel interposed an objection at pg. 122. The trial court recessed and took testimony in chambers regarding the affidavit, and the objection was overruled. During that hearing in chambers, it became the burden of the defendant to show the invalidity of the search. See, Simmons v. State, Okl.Cr., 272 P.2d 457, wherein this rule was re-stated:

"The law presumes the legality and regularity of all proceedings and accused who is charged with violation of prohibitory laws and raises question of invalidity of search and seizure of contraband must assume the burden to introduce evidence to show the invalidity of the search."

There was no evidence presented by the defendant, except insinuations that the affidavit and warrant had been improperly issued. The testimony of the officer taken in chambers pointed to the regularity of the warrant and affidavit.

Defendant's third proposition of error—that Officer Satterfield injected improper testimony on cross-examination which was highly prejudicial—seems to be the most serious allegation, on its face. However, when the whole line of questioning, not only of Officer Satterfield, but of all the officers, is reviewed, it presents quite a different picture. The testimony of Officer Satterfield begins at pg. 142, and we will start at pg. 143:

"BY MR. HAGLE:

Q. Who found any anywhere else?

A. Officer Jack Smith found some cigarette butts on the dresser.

Q. Who else found anything?

A. There was—

Q. (Interrupting) This is all in your presence and we are all in here together, right?

A. I wasn't in the exact place when it was found.

Q. Then you didn't see anybody find anything?

A. No, sir.

Q. And, all you know is what they said?

A. That is right.

Q. All right, you got the man under arrest, did you try any of the clothes on him or check the clothing out or anything like that?

A. We didn't try any of that that night, no.

Q. Did you impound the clothing and take it to the police station?

A. I believe we did.

Q. Do you believe or know for sure?

A. I am not for sure.

Q. Did you check around for letters or identification or anything?

A. Of the defendant.

Q. I mean in the hotel room, look around for correspondence or pictures or anything personal?

A. We made a complete search of the room.

Q. Did you find any objects of personal nature?

A. Not in his room.

Q. Did I ask if you tried any of the clothing on him?

A. We didn't.

Q. Did anybody search the clothing or go through the pockets or anything like that, did you?

A. Not in his room.

Q. You just left the clothing hanging there, did you?

A. I don't recall any clothing in his room.

Q. None at all?

A. Not in his room.

THE COURT: He, who are we talking about?

MR. HAGLE: I don't know. I really don't, I don't think he does either. (continuing)

Q. Do you know whether or not there was any clothing or wearing apparel in that room, yes or no?

A. No.

Q. Do you know whether or not there was any luggage in that room, yes or no?

A. No.

Q. Did you search the person of the defendant?

A. Yes.

Q. What did you find on his person, if anything?

A. *The only thing I recall finding on his person was a newspaper clipping from a newspaper of Wichita, Kansas stating that Mike Eugene Kelly had been arrested on two charges of armed robbery.*

Q. Did you find a billfold in his possession?

A. This was contained in the billfold.

Q. Did he have a driver's license?

A. I don't recall.

Q. Did he have any money?

A. Not that I recall.

Q. Did he have any marijuana on his person?

A. No.

Q. Was he intoxicated or sober?

A. I don't think he was intoxicated.

Q. Did Officer Swindler wait outside the room at any point here and stand guard outside?

A. During what time?

Q. During any time that you know of?

A. No.

MR. HAGLE: That is all.

MR. FUNK: That is all.

(Thereupon the following was had out of the hearing of the jury.)

MR. HAGLE: Comes now the defendant and moves for a mistrial for the reason that the police witness deliberately interjected the charge of another crime for the sole purpose of prejudicing the jury against the defendant.

THE COURT: Ladies and gentlemen of the Jury, it will be necessary for me to take up a matter with counsel out of your presence and hearing. Let's recess for five minutes, please. Remember the earlier instructions I have given you."

Thereupon, counsel for defendant was heard in chambers, and motion for mistrial overruled.

In reviewing the cross-examination by Mr. Hagle of all the police officers, it is obvious counsel knew of the newspaper clipping and was trying to draw out just such a statement for the purpose of a mistrial, or to inject error into the record. Clearly, the statement was invited by defense counsel. These things were obvious to the trial judge, also, as he admonished counsel in chambers, as follows:

"THE COURT: I think this Mr. Hagle. I believe you had reason to believe such a clipping and contents thereof were known to the defendant and perhaps passed on to you because you asked for an exhibit out of the County attorney's file which was part of a photostatic document containing registration in the Ramada Inn and at the top of which contained an article as follows: 'Michael E. Kelly, 17, alias Eugene Sims, of Denver, is in jail at Wichita, Kansas, on two charges of robbery Denver police said.'

I, by a pair of scissors, detached this article from the Registration Card, all photostated as one instrument hoping at that time that the matter wasn't going to come out but you asked several of these officers several questions, did you find any papers of any kind on them. I suspect that maybe you were in hopes that they would blurt it out. I think it was invited I am not sure about it, but we will mark this I guess as State's Exhibit Number One for identification for the purpose of this hearing, State's Exhibit Number One for identification for this purpose of this hearing in Chambers only. So, you knew what the clipping was about and by repeatedly asking the officers, "Did you find any papers of any kind?" And, "What did you find in the wallet?" I don't know if we could lay the whole blame on the Officer about the other charge on the robbery or burglary or whatever it was."

And, further:

"THE COURT: And, I will admonish the Jury to disregard the statement of the officer about any arrest made in Kansas, and that it has nothing to do with this case; besides that Mr. Hagle, you didn't object until after that officer was off the stand and he had testified about that newspaper clipping and testified on several other items before he was excused and after that, you moved for a mistrial.

I couldn't instruct the Jury at that time. I didn't know whether you were going to object to it or not because I didn't know what you were driving at."

The trial judge did order the statement stricken, and admonished the jury not to consider it for any purpose.

This Court held in the 1963 case of Pierce v. State, Okl.Cr., 383 P.2d 699:

"This Court has repeatedly held that an appellant will not be permitted to profit by an alleged error which he or his counsel in the first instance invited by opening the question or by their own conduct; and counsel for the defendant may not profit by whatever error was occasioned by the admission of such incompetent evidence."

In the instant case, the testimony was not admitted, it was stricken from the consideration of the jury, even though counsel did not object at the proper time. If there was any error from this statement, it was clearly invited error, and this Court will not reverse a cause under these circumstances.

Defendant's last allegation is that the evidence was insufficient to sustain the verdict, and that the sentence is excessive.

As to the sufficiency of the evidence, this Court has repeatedly held that it will not reverse a conviction for insufficiency, if there is any evidence, although circumstantial, from which a reasonable and logical inference of guilt arises. Certainly the leasing of room 314 by the defendant; the discovery of the marijuana in the room; and the defendant's return to the room at the time of his arrest is adequate to sustain the conviction.

Further in the case of McCluskey v. State, Okl.Cr., 372 P.2d 623, it was stated:

"Where the evidence is conflicting and different inferences can be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts."

The question of who rented the room, 314, at the Ramada Inn on the eighteenth of July, 1964, was before the jury. They heard all the witnesses, determined their credibility, and the weight and value to be given their testimony. The fact that they chose to believe the witnesses for the state is not error.

As to the excessiveness of the sentence, this Court stated in the case of Berkihiser v. State, 92 Okl.Cr. 31, 219 P.2d 1020:

"The statutory power granted to Criminal Court of Appeals to modify a sentence of one convicted of crime and who has appealed will not be exercised unless court can conscientiously say from all the facts and circumstances that the sentence is so excessive as to indicate that the jury acted from partiality or prejudice."

In the instant case, the sentence imposed was within the statutory limits. No prejudice was shown on the part of the jury, nor error of law shown.

Therefore, it is the opinion of this Court that the judgment and sentence of the trial court is hereby

Affirmed.

BUSSEY, P. J., and BRETT, J., concur.