Tommy Leroy SMITH, Plaintiff in Error.

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13685.

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1966.

As Corrected Sept. 13, 1966.

Rehearing Denied Oct. 3, 1966.

John L. Ward, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles Ownes, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Thomas Leroy Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, with the offense of Robbery with Firearms, and from the judgment and sentence fixing his punishment from ten years to fifty years in the State Penitentiary, a timely appeal has been perfected to this Court.

From the record it appears that at approximately 8:00 p. m. on the 8th day of December, 1963, Mrs. Dollie Young, operator of Tobeys Tourist Court, was playing cards with her grandson, Billie King, age nine, in the kitchen of her apartment located at said tourist court at 13,306 East 11th Street, Tulsa, Oklahoma, when upon hearing someone approach the door to her residence, she proceeded to the front room of her home and was there accosted by two armed gunmen. One of these men in-

structed her to get back in the house and turn and face the wall, which she did. The second man, who came through the door, inquired if there was anyone else in the house, and went through all the rooms where he discovered the safe. The second man (whom she later identified as Orville Carter) gave all the orders, directed her into the back room to open the safe, which she was unable to do, threatened her for not doing so, then taped both her and her grandson, placing handcuffs on her. Her grandson told the second man there was money in her desk, which was taken. Mrs. Young stated that the safe was approximately 36 inches over all, on casters and that the two men, with the assistance of a third companion who had remained in the car, loaded it into a car and took it away.

After the gunmen had left the premises Mrs. Young was able to free one of her hands from the handcuffs and call the police. When the police arrived, she gave the description of the robbers to them. Mrs. Young testified that the description she gave the police was that the first man was about five feet ten or ten and a half, weighing around 160 pounds, with a light complexion, wearing a leather jacket, whom she positively identified on the trial as being the defendant. She detailed the description of the second man of whose identification she was equally positive, and later identified Orville Carter in a police lineup and reiterated her certainty that he was one of the gunmen, notwithstanding the fact that the County Attorney had dismissed charges against him. Mrs. Young denied that she had ever identified Bill Wildren Hill as being Orville Carter's companion who robbed her on the evening of December 8, 1963.

Mrs. Young testified that the safe contained several diamond rings, some very old one dollar bills of the larger size, some two dollar bills, some silver dollars, a bag of pennies, stocks and legal papers.

Billie King corroborated his grandmother's account of the details of the robbery, but was unable to identify the defendant in the courtroom. This witness, at the time of his court appearance, was ten years of age and obviously frightened.

J. B. Hamby testified that on December 8, 1963, he was employed as a Deputy Sheriff of Tulsa County and had investigated the armed robbery where he saw Dollie Young and removed a handcuff from her wrist. He stated that he inquired of and wrote down the description of the two men as given him that night by Mrs. Young, the same being that the number one subject was a white man, approximately 35 to 37 years of age, six foot, 180 to 190 pounds, wearing a tan coat with white cap, dark trousers and he was light complected. She described the larger of the two men as having a pitted face, being a white male, 40 to 44 years of age, approximately 250 pounds, wearing a dark overcoat and dark trousers with a stocking cap, and both subjects had blue stick revolvers. Mr. Hamby admitted that he knew Orville Carter during his lifetime and he was approximately six feet tall and would weigh approximately 175 to 180 pounds and was light complected.

Carol Jean Baker testified that the defendant and two men from Chicago were staying in her home in the City of Tulsa on the 8th day of December, 1963, and that they discussed robbing Dollie Young. In the early afternoon of this same day, this witness testified that she and defendant drove by the Tobeys Tourist Court two times to look the place over. Thereafter, they went back to the witness's home and later that night, after dark, defendant and the other two men left her house in a Chevrolet and returned about an hour later in a new green Buick. Upon defendant's request the witness followed him in the Chevrolet in the vicinity of 14th and Delaware Streets, where they left the Buick. When they returned to her home there was a safe inside and the men broke into it with a sledge hammer. Inside they found some two dollar bills, some silver dollars, two diamond rings, bonds and personal

papers. The three men divided the loot and the next morning defendant dropped the safe in Bird Creek, after burning the remaining contents.

On cross-examination, Carol Jean Baker admitted five felony convictions, denied that she had told Billy Joe Dodson, Noveta Nugent or Mary Katherine Williams that she wanted $1,000.00 not to testify against the defendant.

This witness also testified that defendant advised her that he had stolen the green Buick. The State then put on Don Lambert, who testified that on December 8, 1963, he was employed by Wessel Buick and on that date he reported to the Tulsa Police Department that a green 1961 Buick was missing from his employer's used car lot. Odean Helm, a police officer with the Tulsa Police Department, confirmed that on December 8, 1963, he investigated a report of a stolen abandoned car and did in fact find such car parked in the street in front of 2612 East 14th.

In his defense the defendant offered first the testimony of Bill Wildren Hill, which was that he had been placed in a police line-up that was viewed by Dollie Young and that shortly thereafter he was charged with this robbery, only to have the prosecution later dismissed against him when it was shown that he was in the state penitentiary on the date in question.

The witness Billy Joe Dodson testified that he was a bartender in a private club in Tulsa and that on more than one occasion he had heard Carol Baker state in effect that if this defendant didn't get some money to her she was going to send him to the penitentiary.

Next the defendant himself testified and his testimony was, in essence, a general denial of all the testimony of Carol Baker. He further testified that Carol had come to him after he was charged with this crime and expressed her regrets that he was so charged and had indicated to him that she knew he was not the guilty party. On cross-examination he testified he had at one time had a relationship with Carol, but that it had been broken off long before the date on which this crime was committed, and that he had never been inside the residence that Carol testified as being her home and the place from which the crime was commenced.

Next came the testimony of Noveta Nugent, which was that she had overheard the conversation between Carol Baker and Billy Joe Dodson in the Admiral Club and that in the conversation Carol had stated that if this defendant came up with some money she would not testify against him.

Mary Katherine Williams testified that on one occasion she was having lunch with this defendant when Carol Baker came up and stated that she was sorry about defendant's troubles, that she knew she was doing wrong but could not help it. On cross-examination she testified that she was the girlfriend of defendant and that they had planned to be married.

In rebuttal the State called first Jewel Barron who testified that Carol Baker was her daughter and that on one evening in December of 1963 she stopped by Carol's house and observed two men either loading or unloading something from a car that was backed up to the garage. She stated she went into the house and that this defendant was there. She further stated that on another occasion shortly before Christmas of that year, she had gone to Carol's house and had seen this defendant in bed asleep. Carol Baker, called in rebuttal, testified that the specific date that her mother came to her house when the car was backed up to the garage was December 9, 1963.

 It is first contended by defendant that the evidence as a matter of fact and law is insufficient to sustain the conviction. In support of this contention he argues that since Carol Baker was an accomplice, there was no evidence introduced independent of said testimony to corroborate the accomplice's testimony and link the defendant with the commission of the crime. With this contention we do not

agree. In Heartsill v. State, Okl.Cr., 341 P.2d 625, this Court stated in the syllabi:

"11. It is not necessary that the corroborating testimony be complete, independent proof of the crime, but if an accomplice's testimony is corroborating in part, the jury is then justified in believing the accomplice's entire story to be true.

12. Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime. It is sufficient if it tends to connect him with its commission.

13. Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

14. Where there is evidence in corroboration of an accomplice tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury.

15. Where the sufficiency of the evidence to corroborate an accomplice is challenged, this Court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict.

16. The law prescribes no standard for the strength of corroborating evidence, and there is failure to corroborate only if there is no evidence legitimately having that effect."

Moreover, we observe this argument ignores the direct testimony and identification of Mrs. Dollie Young, which alone would support the verdict of the jury. We are of the opinion, and therefore hold, that the defendant's first assignment of error is without merit.

It is next contended that the trial court erred in failing to declare a mistrial upon defendant's motion on three separate occasions and that the admonition by the court, to the jury, was insufficient to remove from the minds of the jurors the prejudicial matters already placed therein.

Appearing at pages 80 and 81 of the casemade the witness Carol Baker testified as follows:

"MR. SHAFFER: Carol, did you ever have any conversation with the defendant, Smith, concerning this green Buick, that you testified to?

A. Yes, sir.

Q. Do you recall what that conversation was, and when it took place?

A. Yes, he was complaining, he said that they had—he had stolen two cars before then—

MR. WARD: Now, we are going to move that that be stricken, and ask for a mistrial.

THE COURT: I will strike it and admonish the jury not to consider it."

The defendant contends this was prejudicial error and constitutes grounds for reversal of this case. He makes the same complaint in regard to this witness's testimony reported on page 82 of the casemade:

"MR. WARD: Who offered you any money not to testify in this case, Carol?

A. Well, a gentleman named Jack Beebe and Bill Miller, came over to a friend of mine's house with a story they wanted to meet me, that they had $1,000 for me not to testify against Mr. Smith. I have also received numerous threats and friends of mine have received threats.

MR. WARD: We move that be stricken, your Honor.

THE COURT: The last part was not responsive, the first part was, so the latter part about threats will be stricken, and the jury admonished not to consider it.

MR. WARD: And may I renew my motion as to that?

THE COURT: The motion for mistrial will be overruled.

MR. WARD: Exception."

The third instance of which defendant now complains, arose when the jury was reconvened after the court had properly admonished them before allowing them to separate during a recess. Appearing at pages 152–153 of the casemade is the following:

"THE COURT: Before we proceed, I desire that all of the jurors stand and take an oath, please.

Do you and each of you solemnly swear that you will make true answers to questions now about to be propounded by the Court, concerning matters that may have occurred since our last adjournment?

You may now be seated.

It has been brought to the attention of the Court that there was an article in the morning newspaper, concerning certain things in connection with this trial that were not presented to you during the trial, and that perhaps there might have been a radio story of similar import, can each of you affirmatively tell me that you did not see, nor read, nor have your attention called to an article in the morning newspaper, as I have referred to? All of you affirmatively tell me—

MR. AZLE MORGAN (juror): I saw the heading in the paper and did not read it.

THE COURT: You tell me you did not read it?

MR. MORGAN: I did not read it.

THE COURT: In other words, you obeyed the admonition I gave you last night about not reading or hearing anything concerning this case?

MR. MORGAN: That's right.

THE COURT: And do all of the rest of you tell me that you likewise obeyed the admonition of the Court?

(The jury answers in the affirmative)."

The headline of the newspaper article was captioned:

"WITNESS CLAIMS BRIBERY ATTEMPT."

The Court at this point overruled the defendant's motion for mistrial.

It is the contention of defendant that: "* * * even though the trial court sustained defendant's counsel's objection to said evidence and admonished the jury not to consider same, the mere fact that these allegations of auto theft and bribery came before the jury constituted prejudicial and reversible error. * * *"

■ The precise question raised by the defendant in the instant case has been before this Court many times and the rule seems to be well established that:

"In a close case voluntary statements of a witness calculated to prejudice the jury against an accused may constitute reversible error, but in cases where the record overwhelmingly supports the guilt of the accused and it is evident that if the same facts were presented to the jury upon a new trial of the cause they would arrive at the same verdict this error will be treated as a basis for a modification of the sentence."

Titsworth v. State, Okl.Cr., 368 P.2d 526.

■ From an examination of the entire record we are of the opinion that the proof of guilt is overwhelming and if the same facts were presented to a jury upon a new trial of the cause they would arrive at the same verdict. Moreover, we observe that the second instance of which the defendant now complains wherein the witness testified that she had been offered $1,000.00 not to testify against defendant, came in direct response to a question propounded by counsel for defense. In the recent case of Kelly v. State, Okl.Cr., 415 P.2d 187, we stated the rule applicable to the situation presented in this instance:

"[A]n appellant will not be permitted to profit by an alleged error which he or his counsel in the first instance invited by opening the question by their own conduct, or by repeated pointed questions de-

signed to draw out improper testimony; and counsel for the defendant may not profit by whatever error was occasioned by the admission of such incompetent evidence."

The third instance of which defendant complains under his second assignment of error that a juror had read a newspaper article prejudicial to the defendant during recess of the court and was prejudiced thereby, is not supported by the record, for it affirmatively appears that the juror read only the headline and not the content of the article.

There are other assignments of error, but they are not of sufficient merit to require a reversal.

In view of the prejudicial remarks of the witness, Carol Baker, we are of the opinion that the means of justice can best be served by modifying the sentence from a term of confinement of from 10 to 50 years imprisonment to a term of 8 to 24 years imprisonment and as so modified, the judgment and sentence is affirmed. Modified and affirmed.

BRETT, J., concurs.