**Jeanetta THIGPEN, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A-14563.**

Court of Criminal Appeals of Oklahoma.

Nov. 19, 1969.

William H. Lewis, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Jeanetta Thigpen was charged in Oklahoma County District Court with the crime of Concealing Stolen Property. She was tried before a jury, who found her guilty and assessed her punishment as Six Months in the penitentiary. She shall hereinafter be referred to as the defendant. The appeal was lodged in this Court in the time prescribed by law, asserting error based upon what she contends to be an illegal search and seizure, and the admission of evidence acquired thereby, and that a demurrer to the evidence should have been sustained.

A review of the transcript reveals, in substance, the following facts: The State called as their first witness one J. L. Anders, Jr., who was the owner of the A & A Pawn Shop, located 839 N.E. 8th, in Oklahoma City; and that he was the owner of State's Exhibits Nos. 1, 2, and 3; and that said exhibits were in his place of business when he locked the same up on January 19, 1967 and the next morning when he opened his place of business, the back door was knocked off and said property missing, and the State introduced these three exhibits in evidence and the defendant interposed no objection. On cross-examination, said witness testified that he did not know who burglarized his place of business. The next witness called by the State was Stephen

Patterson, a police officer with the Oklahoma City Police Department, who stated that he went to 627½ N.E. 7th Street to arrest this defendant, whose apartment was on the second story, and when they arrived at defendant's apartment, the door was ajar approximately a foot, and they looked in and couldn't see anybody inside and knocked on the door and received no response, and when they looked into the apartment, they saw the end of a barrel of a gun between the mattress and the bedsprings, and they then proceeded into the apartment and removed the shotgun from between the mattress and the bedsprings. Whereupon, defendant objected to any testimony as to what the officer did and found, unless it could be shown that he had a search warrant to search her apartment. Whereupon, the court announced to the jury that the evening recess would be taken, and the court was recessed until nine o'clock the next morning. The trial court then announced from the bench on page 26 of the casemade, as follows:

"I believe that in this case this was an illegal search, I believe that it was an illegal search."

Then the court cited the case of Kelly v. State, Okl.Cr., 415 P.2d 187, and overruled the defendant's motion to suppress the evidence on account of an illegal search, on the grounds that the objection to such evidence had been waived by defendant failing to object to the introduction of Exhibits 1, 2, and 3 at the time the owner of said items was testifying. Officer Patterson then proceeded to testify that when he entered the apartment and pulled the gun out from between the mattress and bedsprings, he checked the serial number and found that it had been reported stolen, and at that time, there were two other officers present. The witness further testified that there was an opening up to the attic and sticking out over the opening was the end of two guitars, which were later marked State's Exhibits Nos. 2 and 3; that the defendant, Jeanetta Thigpen, wasn't present and the officers took these guitars into their custody. On cross-examination, the officer testified that he did not know where the defendant was, and that they located these exhibits on January 24, 1967, and located defendant on January 27, 1967, or about three days later. That he didn't know how long it had been since she had been in the apartment, that he did not have a search warrant to go into the apartment, and when he was asked if he could have gotten one, his answer was yes; and he was asked "Why didn't you?"; and the trial court sustained an objection to said question. But he did specifically testify that he did not have a search warrant. Elaine Marie Wilson, appearing as a witness for the State, testified in substance that on January 19, 1967, she lived upstairs at 627 N.E. 7th Street; that there were three apartments up there, and that the defendant, Jeanetta Thigpen, had one; and that ther apartment was across the hall from this witness's apartment; that she knew a man by the name of William Edward Whitworth and had known him for about two months; that during the night of January 19, 1967, the said Whitworth and two other fellows came upstairs, and that one of their names was Tommy Brown, and that they were carrying something wrapped up in a white sheet or pillow case, and they went into this defendant's apartment, and then Whitworth came out and saw this witness and asked her if she didn't want a gun and her answer was yes. On cross-examination, she testified that on this same night she saw Whitworth and Tommy Brown and another man come up the stairs and go into this defendant's apartment; and that defendant was not home, and that she had not seen defendant for a couple of days before January 19th, and that she did not see defendant there after January 19th, or on the 20th, 21st, 22nd, 23rd, 24th, 25th, 26th, or 27th. That after this witness came back from the hospital, the defendant did not have the apartment anymore. That her mother had moved the stuff out, but she did testify that she was not living at the apartment several days before January 19th;

that she never saw the defendant come and go from her apartment from the 17th of January to the 27th day of January, 1967; and the next time she saw her after January 27th was when she came to the hospital to visit her. That this defendant's apartment was one room and kitchenette, and she further testified that someone had come there and moved defendant's possessions out of the apartment the day she came out of the hospital, which was January 27th. This witness was asked if she knew whether or not the defendant had any knowledge at all that these three articles, to-wit: the gun and the two musical instruments, were in her apartment, and her answer was that she couldn't have had any knowledge of those things in her house because she wasn't there when the boys came up there and she didn't have any knowledge of the guitars, (cm 57) and on re-direct examination, she testified that to her knowledge, the defendant didn't know that these articles were in her apartment. The State called the person convicted of stealing Exhibits 1, 2, and 3, who was serving time in the State Penitentiary for said crime. He testified, in substance, that he knew the defendant and was presently incarcerated in the penitentiary for car theft, but prior to his incarceration, he was charged with burglary of the A & A Pawn Shop which occurred on January 19, 1967; that he entered a plea of guilty to a charge of burglary in the second degree, and was sentenced to serve a term of three years. That he, Tommy Brown, and James Bethany went over to Jeanetta Thigpen's apartment, and they took some guns to her apartment, and this witness testified that defendant was not at home and in answer to a question what was his purpose in going to her apartment at the time, his answer was, "I don't know. I just went over there." (cm 66–67) The said witness also testified that he took two guitars and the shotgun to her apartment and they left, but left the three items in her apartment, and after leaving these items in her apartment, Whitworth returned the same night and the defendant was not there, and then they remained there for the rest of the night and

left about 9:30 or 10:00 a. m. the next day. In the meantime, the defendant came home, and when Whitworth left the next morning, they took the gun and guitars with them and went over to Tommy's house, and in answer to the question if the defendant saw him take the gun and guitars with him, his answer was, "She didn't see the guitars", and when asked the question why she didn't see the guitars when he left the room, his answer was, "She was over to Elaine's, across the hall". Then they went to Tommy's house and left the gun and guitars in the trunk of Tommy's car, and then went over to Rosie Lee Robinson's house and left some other guns there, and all this time, the gun in question and the two guitars were in the trunk of his car. Then they went to the laundry, and Whitworth testified that he carried this gun and the two guitars back to Jeanetta Thigpen's apartment, and that he didn't know the whereabouts of defendant. And, from the witnesses' testimony, it appears that the same day, he took these items and brought them back to the apartment and put them in the loft and forgot where the gun was, but thought it was by the icebox, and then he concealed these guitars from sight and left the apartment. That defendant was not there; that the purpose in taking the gun and guitars the first time was to take them to Rosie Lee Robinson's and he intended to leave them there, but they were wrapped in a sheet and when he got the other guns out, one of the little kids shut the trunk and they just forgot all about it, and left them there. On cross-examination, Whitworth testified that he was in and out of Jeanetta Thigpen's apartment four or five times, and at no time after all of these trips that he made there, was the defendant at home. And, that these instruments were under his control and that they belonged to him and Tommy Brown and did not belong to Jeanetta Thigpen; that they never did belong to defendant and were never given to her by Tommy Brown or himself; and Whitworth testified that he didn't have any arrangements with her to hide them in her apartment, and that he had no permission to leave those items in her

apartment; that he left them there because he wanted to and without her permission and that she didn't have anything to do with this merchandise. The defendant denied that she concealed the shotgun and two guitars, and testified that she knew Whitworth and that he used to be her boyfriend, but not after September, but he knew where she lived. In answer to a question was she at her home on the night of January 19, 1967 when he came there, her answer was no; later when she came home to get some clothes, she saw two pistols, one lying on the dresser and one that Tommy had in his hand, and she told Whitworth to get them out of her apartment because she didn't want any stolen stuff in her house, but she denied that she ever saw the shotgun and the two guitars; that she was living over at her Auntie's at 314 N.E. 7th Street, because her Auntie was sick, and that she never saw the articles that she was charged with concealing, and that she saw them for the first time in the courtroom. She testified that she was over to her Auntie's when her mother came and advised her that the police were looking for her and that they had a warrant for her arrest, and later she was arrested. She further testified that she did not intend to keep the apartment when her rent was due again, and only returned there to get some clothes.

It is difficult for your writer to understand how the jury could have found defendant guilty upon the testimony of the State, and the trial judge would have been thoroughly justified in sustaining a demurrer to the evidence. I agree with the learned trial judge that the Exhibits 1, 2, and 3, were obtained by an illegal search, and the only question herein presented is whether the invalidity of the search was waived by defendant's failure to object at the time said exhibits were first offered into evidence.

This Court does not think this to be true. When said items were introduced they had been identified as items belonging to the owner and stolen from his place of business on a certain date. Defendant did not object to this astute maneuver. But, when the evidence was presented that these same items were the fruits of the illegal search, defendant did object.

In the case of Shirey v. State, Okl. Cr., 321 P.2d 981, at page 988, wherein this Court said:

"An objection to evidence obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination *as soon as it becomes apparent that state will rely thereon,* and defendant failing to make timely objection waives right to be heard on such questions." (Emphasis ours.)

It is obvious that counsel for defense objected at the first indication as to what the state was relying upon, or what means they used to seize the items. We think the objection was timely and should have been sustained. The officer could have obtained a search warrant with the greatest of ease, and would not have been compelled to use the subterfuge that the door was standing ajar and the items were in plain view. In the case of Handley v. State, Okl.Cr., 430 P.2d 830, this Court admonished officers relative to warrants, and should not be ignored. The Court said:

"Law enforcement officers are paid by the month, and could save the State thousands of dollars in useless prosecutions, if they would only stop by the courthouse (or wherever the magistrate should be located) and secure a search warrant."

For the above and foregoing reasons, the judgment and sentence of the lower court is hereby reversed and remanded with instructions to dismiss.

BRETT, P. J., and BUSSEY, J., concur.