Steve **KARLIN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–306.

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1975.

**1182**

Kris Hochderffer, Stillwater, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Steve Karlin, hereinafter referred to as the defendant, was charged with John Anthony Salinas in the District Court of Payne County with the crime of Conjoint Robbery by Force and Fear. He was tried by a jury, found guilty, and his punishment was fixed at a term of six years in the penitentiary. From that judgment a timely appeal has been made to this court.

On October 22, 1974, at approximately 7 p.m., defendant went to Shorty's, a bar also known as the 177 Club, in Cushing, Oklahoma. There he encountered an acquaintance, the co-defendant Salinas, a friend of Salinas named Ron Boggs, and the complaining witness, Larry Colston. After about an hour, these four men left in Colston's pickup truck and went to the B & L Club, where they spent another hour to hour and a half. While at the Club, they were served by Norma Jean Mansfield, the club manager, and visited with Bo Chandler and his wife. At about 9:30 or 10 o'clock, the defendant, co-defendant Salinas, Boggs and Colston left the B & L Club. At this point, the testimony of Colston is broadly divergent from that of the defendant and Salinas.

Larry Colston testified that all four of the men went, in his truck, to Dorothy's Club (also known as Waynette's), where they spent another hour or so. Throughout the evening, all the individuals involved consumed varying, but admittedly large, amounts of beer and mixed drinks. Around 11 o'clock, Colston decided to leave. The defendant and co-defendant followed him out of the Club. About five yards from the door, Colston was struck from behind and fell to the ground. He was dazed for a few seconds, and when he recovered his senses, he saw defendant above him. The defendant then kicked him in the face. Colston stated that he

was kicked numerous times, and that he felt someone reach in his right rear pocket and remove his billfold. He also testified that he heard the co-defendant Salinas remark, "Well, all he has is $30.00," (TR 48) at which point he jumped up and began to run. He testified he was followed by defendant until the co-defendant called out, "Let him go, let's get out of here." (TR 49).

Colston, according to his testimony, returned to the B & L Club where he encountered Cecil Myers. Mr. Myers testified that Colston was bleeding, appeared to have a broken nose, and to be in great pain. Mr. Myers took Mr. Colston into Cushing to the home of Colston's sister. Dr. John D. Hesson testified that Colston was brought to the Emergency Room at Drumright Hospital. He was hospitalized by Dr. Hesson for four days for observation and treatment due to possible internal injuries. His injuries consisted of a fractured nose, a ruptured eardrum, bruising about the face, the left neck, the chest, the lower back, the abdomen, both arms and legs, and over the left ear, and multiple abrasions.

The co-defendant, John Salinas, had a somewhat different version. He testified that when the four men arrived at Dorothy's, Ron Boggs did not enter with them, but instead went on to the Hi Ho Club nearby. (The Hi Ho Club is also referred to in the record as the Hi Lo Club. It will be called the Hi Ho hereinafter for the sake of clarity.) Defendant left Dorothy's and joined Boggs at the Hi Ho, then returned to join John Salinas and Colston at Dorothy's. Salinas stated that after about forty minutes, he, defendant and Colston joined Boggs at the Hi Ho. There, Colston had an argument with the manager of the club because he would not cash Colston's personal check, and so Colston left. Salinas stated that he and the defendant tried to find Colston there and at Dorothy's, but Colston's pickup was gone. The

men did find a friend of Salinas who took defendant and Salinas to the Wagon Wheel (another Cushing bar) where they ate pizza and played pool for about forty minutes. Neither defendant nor Salinas was able to identify the individual who gave them the ride to the Wagon Wheel, and he did not testify. The men returned to the B & L Club just as Colston left with Mr. Myers, and Norma Jean Mansfield told them of the robbery.

The defendant's testimony was substantially the same as that of the co-defendant. The testimony about who paid for the numerous drinks purchased throughout the evening was in complete conflict.

■ Defendant brings three assignments of error. First, he alleges the evidence against him was insufficient to support a verdict of guilty. Defendant contends that the only testimony tending to implicate him was Mr. Colston's statement that "one of the two, I don't know for sure which, ran their hand down in my right hand pocket and took my billfold. . . ." (TR 48). Defendant neglects to mention the testimony of Mr. Colston that he saw the defendant kick him in the face just prior to the time the billfold was removed from his pocket. In any event, even if co-defendant Salinas, not defendant, removed the billfold from the pocket of Mr. Colston, it does not change the guilt of the defendant. When the defendant and the co-defendant acted in concert in the commission of a robbery, both were principals and the act of one was in point of law the act of the other. *Allen v. State*, Okl.Cr., 450 P.2d 516 (1969); *Wing v. State*, Okl.Cr., 490 P.2d 1376 (1971); 21 O.S. 1971 § 172.

■ The complaining witness, Mr. Colston, testified in great detail regarding the injuries inflicted on him, his fear that he would be killed, and his recognition of the two individuals who robbed him. We are of the opinion that this testimony by the victim, if believed, is sufficient to sup-

port the jury's verdict. This Court has held, on numerous occasions, that

> Where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Kelly v. State,* Okl.Cr., 415 P.2d 187, (1966); *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970).

Defendant states there was no evidence showing asportation of the stolen property, a necessary element of the offense. As authority for his position, defendant cites only one case, that of *Norris v. State,* 68 Okl.Cr. 172, 96 P.2d 540 (1939), which is clearly distinguishable from the present one, since it involved a charge of kidnapping. Defendant proceeds along a somewhat novel theory that since the victim, bleeding from his wounds, shoeless, with a broken nose, chose to run for help rather than to stay to determine what was happening to his property, there was no evidence of asportation. The fact remains that Mr. Colston testified that he had his billfold when he left Dorothy's Club, that defendant and co-defendant followed him, that defendant kicked him, that his billfold was removed from his pocket and that he no longer has it. This removal of the property from the possession of its lawful owner is sufficient asportation to constitute the wrongful taking necessary for a conviction of robbery. Defendant's first

assignment of error is accordingly without merit.

■ For his second assignment of error, defendant argues that his sentence should have been suspended or deferred. This decision is clearly within the discretion of the trial judge and will be disturbed on appeal only if there is a clear showing of abuse of that discretion. *Allen v. State,* Okl.Cr., 527 P.2d 204 (1974). In this case, where the victim was so severely beaten that he required four days of hospital care, and where defendant received only one year over the minimum sentence when he could have been sentenced to fifty years, no such abuse is shown.

■ Finally, in his third assignment of error, defendant repeats his allegation that his sentence should have been suspended or modified, and that he was prejudiced by the inclusion in the presentencing report of his juvenile record. We would note that at the time of sentencing, defendant specifically stated there was *no objection* to the presentencing report (Sentencing TR 16). Further, no evidence of the use of the juvenile records appears in the record before us. Where the error complained of is not preserved in the record, the Court of Criminal Appeals will not consider it on appeal. *Young v. State,* Okl.Cr., 373 P.2d 273, cert. den. 83 S.Ct. 513, 371 U.S. 957, 9 L.Ed.2d 504 (1962).

For the reasons outlined, the conviction is affirmed.

BUSSEY and BLISS, JJ., concur.