**Harry Robert HANDLEY, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error,**

**No. A-14038.**

Court of Criminal Appeals of Oklahoma.

July 19, 1967.

Don Anderson, Oklahoma County Public Defender, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge:

Plaintiff in Error, Harry Robert Handley, was charged in the District Court of Oklahoma County with the crime of Illegal Possession of Narcotics, After Former Conviction of a Felony. He was tried by a jury, found guilty, and his punishment assessed at seven years in the penitentiary. From that judgment and sentence the Public Defender of Oklahoma County has perfected his appeal to this Court contending three assignments of error: The first being that the arrest of defendant was improper, and this being true, the officers had no right to search the premises.

From the record, it appears that defendant had been charged with the crime of Burglary Second Degree After Former Conviction of a Felony in Oklahoma County case #30785. Defendant filed a motion to quash and the District Court sustained the motion, allowing the county attorney to refile the charges in justice court, being Oklahoma County case #31239. When the officers went to defendant's house to arrest him under this new warrant on the Burglary charge, they were accompanied by two State Narcotic Agents. They stated they went to the door, saw defendant and his wife run into the bathroom, and then return to admit the officers. They placed the defendant under arrest on the warrant for Burglary, and immediately went to the bathroom to attempt to determine what, if anything, defendant was trying to hide. They found a Winston cigarette package containing hypodermic syringes, needles, a spoon, and eyedropper in the water closet of the toilet. The State Narcotic Officers then proceeded to crawl under the house, allegedly to search the trap and determine if they had flushed anything else down the toilet. They "discovered" a fruit jar buried under the house containing seven packets of a white powder; which, after testing, was found to be an opium derivative. The state chemist subsequently analyzed it, and identified it as morphine.

It is the contention of the defendant that there was no occasion to issue a warrant for defendant on case #31239, making the arrest on this charge illegal.

This Court has fully dealt with this contention in the companion case: A–14,039, Handley v. State, Okl.Cr., 422 P.2d 217, opinion handed down December 21, 1966, and found the arrest to be legal.

However, this Court is seriously concerned with the question of an unlawful search.

■ While the law is well-settled that:

"Evidence discovered by an officer when he is in a place where he has a legal right to be is admissible to support a charge where such evidence would be involved."

See, Puckett v. State, Okl.Cr., 363 P.2d 953; and Farnsworth v. State, Okl.Cr., 343 P.2d 744.

■ It is also well-settled that an improper search and seizure is determined by the *reasonableness* of the search.

The State, in their brief, attempts to rationalize that the search was reasonable, and therefore not illegal.

However, these pertinent facts stand out sharply in the record—(1) Why did two *State Narcotic Agents* accompany county sheriff's deputies to arrest defendant on a warrant for Burglary Second Degree?; (2) This warrant was not one in which the officers would have been looking for evidence to support the Burglary charge on which they were arresting, as this defendant had been previously arrested on the same charge, and it is assumed that the state had the evidence for the Burglary charge at the

time he was previously arrested; (3) How did the Narcotic Agents "miraculously discover" the fruit jar buried under the house?

▮ It is obvious to any novice, that the State Narcotic Agents had prior knowledge of the jar of morphine being buried under the house, and merely used the warrant of arrest for Burglary as a subterfuge in gaining entrance and searching the premises without having to obtain a search warrant. These facts do not constitute a reasonable search incident to the arrest for Burglary.

This Court will not go into the long line of cases, both State and Federal, which support this, but will briefly state from 47 Am. Jur. § 19, page 515, note 15 (new paragraph found in the cumulative supplement at page 72):

"The United States Supreme Court decisions which are concerned with the question of the legality of the search of premises as incident to a valid arrest do not lend themselves to easy summarization: the court itself has acknowledged that 'the several cases on this subject in this Court cannot be satisfactorily reconciled'. At the same time, there are certain principles which appear relatively well settled. Thus it is clear that a search of premises without a warrant, made in connection with a lawful arrest, is not by its nature an unlawful search, nor is it by nature lawful: the right to make such a search is a strictly limited one; only a reasonable search is permissible, and the bounds of reasonableness are overstepped when (1) the premises searched are separated from the place where the arrest was made; or (2) the search is a 'general' and 'exploratory' one; or (3) the search has as its purpose the seizure of things to be used purely as evidence (as distinguished from the fruits of the crime—such as stolen property—and the means by which it was committed); or (4) a tremendous quantity of property is seized (the seizure of the entire contents of a house being barred).

▮

A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer, to prevent the prisoner from escaping, or to discover fruits of a crime * * *."

79 C.J.S. Searches and Seizures, § 8, page 787:

"What constitutes a reasonable or unreasonable search and seizure in any particular case is purely a judicial question, determinable from a consideration of the circumstances involved, including the purpose of the search, the presence or absence of probable cause, the manner in which the search and seizure was made, the place or thing searched, the character of the articles procured, and the nature and importance of the crime suspected."

79 C.J.S. Searches and Seizures, § 26, page 796:

"More generally, the guaranty does not prevent the seizure, incidental to a lawful arrest, of any articles which it is unlawful for the person arrested to have and which may be used to prove the offense, or anything the seizure of which is reasonably deemed necessary to the officer's own or to the public safety, particularly if such articles are in plain view and no search is required to discover them. The seizure of such articles, within proper and reasonable limits, is not prohibited by the constitutional guaranty, whether they are found on the prisoner or on premises under his control.

On the other hand, the doctrine that the constitutional guaranty does not prohibit search and seizure as an incident of a lawful arrest may not be used as a pretext to search for evidence nor does it justify a general exploratory search of the premises (United States v. Lefkowitz, N.Y., 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775) and an unlawful arrest cannot justify a search and seizure as an incident thereof."

In the instant cause, we would be more inclined to accept the theory of the State

regarding a reasonable search, if the sheriff's deputies had not been accompanied by the two State Narcotic Agents, who had absolutely nothing to do with the warrant of arrest for Burglary Second Degree.

 We therefore conclude that the proper test of a reasonable search and seizure is based upon the entire factual situation. Was the search close both in time and space to the arrest? Furthermore, was the intensity of the search commensurate both with the crime and what was known of the criminal? Finally, there is the question of the causal relationship between the arrest and the search. In each case, the trial judge must determine whether the officers went to the place to make a lawful arrest, and in making it, looked for evidence lawfully subject to seizure, *or whether the officers used a pretended arrest for one offense as a "Trojan Horse" in order to obtain entry, only to prosecute for some greater crime after finding sufficient evidence to justify their belief in greater crime.*

The first kind of search is incidental to an arrest and is lawful—the second is a fishing expedition, and is as odious as the general warrant of antiquity.

 This Court is of the opinion that the search conducted by the State Narcotic Agents was a "general exploratory search", and is therefore, unreasonable. It follows that the search was illegal and the evidence inadmissible.

If this Court were to condone this type of search, charges could be dismissed and refiled again and again, for the purpose of an exploratory search without a warrant.

Law enforcement officers are paid by the month, and could save the State thousands of dollars in useless prosecutions, if they would only stop by the courthouse (or wherever the magistrate should be located) and secure a search warrant.

It is, therefore, the order of this Court that the judgment and sentence in this cause be, and the same is, hereby Reversed and Remanded to the District Court of Oklahoma County, with Instructions to Dismiss.

BUSSEY, J., and TOM BRETT, J., concur.