Phillip Wayne SMITH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14427.

Court of Criminal Appeals of Oklahoma.

May 7, 1969.

Rehearing Denied June 27, 1969.

Robert O. Swimmer, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Bruce G. Rossiter, Legal Intern., for defendant in error.

## MEMORANDUM OPINION

BRETT, Presiding Judge.

Phillip Wayne Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the crime of Burglary in the Second Degree; his punishment was assessed at four years imprisonment in the State Penitentiary, and he appeals.

On the trial, Police Officer Paul Reed of the Oklahoma City Police Department, testified that he was traveling south on Agnew at about 2:30 A.M. on December 7, 1966, when, in the vicinity of 2205 South Agnew the defendant, driving a station wagon, backed out of the drive of Bates & Hudgins Used Cars, at a high rate of speed, directly in front of Officer Reed. The officer turned on the car's red light to stop the defendant, and then asked to see the defendant's driver's license. The officer issued a citation for improper backing. This officer testified he saw certain merchandise in the back of defendant's station wagon, consisting of three mounted tires and one unmounted tire, one hub cap, one set of jumper cables, one television antenna, five radios, and one television set. Officer Reed called for a backup officer to

assist him and together they discovered that Bates & Hudgins Used Cars had been burglarized.

Officer Reed testified he warned the defendant of his rights and the defendant started telling the officer that he had broken into the building. Officer Reed again advised the defendant that anything he said could be used in court against him.

Lee Robert Bates, owner of Bates & Hudgins Used Cars, testified to his ownership of the merchandise. He positively identified ownership of one tire and did not affirm or deny ownership of the other three because, as he said, "I've got so many tires like that * * *." (CM 37–38). He did indicate that four tires like the four in question were in his store by saying, "the spare, all four was there." (CM 38). Mr. Bates testified that he knew some tires were missing after the burglary, but he could not identify each one. He further identified the television set as the one he kept in his office and positively identified the Crosley radio as his. He testified that he thought he had six to eight radios in his office because he did radio work on the side, but could not identify the hub caps and jumper cables "because I have so many of them. * * *" (CM 39).

On appeal, the defendant urges that the trial court erred in allowing evidence against the defendant in contravention of his constitutional rights. The Attorney General's brief succinctly answers this proposition, and we herewith adopt the same.

"There was no necessity to warn the defendant of his rights in this case because there was no interrogation. The supreme Court stated, 'But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained *as a result of interrogation* can be used against him." Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed. 694. (Emphasis supplied). The requirement of a warning of "rights" is based on knowledge or lack of knowledge of one's rights. It is necessary for a suspect to have a *free choice* whether he wishes to incriminate himself *by his own words*, instead of making the state build its case. No free choice can be made, by definition, unless the suspect knows he has the alternatives to speak or not. The Miranda decision explicitly states it is not concerned with voluntary statements. Miranda v. Arizona, supra at 478 [86 S.Ct. 1602]; in accord Fritts v. State, Okl.Cr., 443 P.2d 122. Since no choice is compelled when dealing with voluntary statements made in the absence of interrogation, the court need not safeguard the individual's right to remain silent. The individual's right to remain siled is safeguarded by the fact that nothing is attacking the right.

In the present case no interrogation occurred to elicit the confession. The officer informed the defendant he was under arrest. The defendant then confessed to the crime on his own. He was under no compulsion to speak, therefore no necessity existed to warn him of his right to remain silent.

B. Officer Reed warned the defendant twice of his rights.

Even though there was no necessity to warn the defendant of his rights, he was so advised as the following excerpts from the casemade indicates; (CM–21–22):

Q—"Go ahead officer and tell what happened there."

A—"Well, the other officers arrived to assist me as I stated. I checked the building and found it had been broken into, and went back to the car and advised both subjects that they were under arrest for burglary, and I did advise them of their rights."

Q—"What did you tell them?"

A—"Anything they said could be used against them; they had a right to counsel; they could use the telephone, and so forth. Whereupon the defendant started telling me that

he had broke into the building, and I advised him—".

\* \* \* \* \* \*

A—"Anyway, I advised him of his rights. He, like I stated, started to tell me that he had broke into the building, he had broken out the window, and it was his idea, and so forth, to break into the place; and I advised him again that anything he said may be used against him in court." \* \* \*

Since the safeguard of warning the defendant of his rights was given though not necessary, the defendant can not complain that he was not warned of his rights. The evidence offered to support the case against the defendant was admissible.

For the foregoing reasons, we are of the opinion that this assignment of error is wholly without merit."

■ As his second assignment of error defendant urges that "pretended arrest for one arrest as a 'trojan horse' in order to justify another charge contravenes reasonable search doctrines."

Again, we feel the Attorney General's brief fully answers this proposition.

"It is not clear why the defendant feels the search and seizure was unreasonable, because it is not clear whether a search and seizure took place. The defendant could be contending that the search and seizure of the goods at the police station was unreasonable and unconstitutional. Implicit in the presentation at trial of the fruits of the crime as evidence is the fact that a search and seizure took place at the police station, but there is no allusion to any such search in defendant's brief or in the casemade. The only other possible search and seizure the defendant could be referring to is when the officer looked at the "fruits of the crime" in the back seat of the defendant's car. As to either possibility, the requirements for search and seizure were fulfilled.

The implicit search and seizure at the police station was reasonable. Once an arrest is legally made, an officer may search the person and the immediate surrounding of the person arrested as an incident to the arrest. Phillips v. State, [95] Okl.Cr. [336], 245 P.2d 129 (1952). There were two valid arrests in the present case. The first was the arrest for a traffic offense committed in the presence of Officer Reed. The officer then arrested the defendants for burglary based on probably cause. At 2:30 in the morning, the defendant was speeding in a car full of merchandise out of a driveway of an auto parts store which had a window broken out. Since this arrest for burglary was justified, Booze v. State, Okl.Cr., 390 P.2d 261 (1964), any fruits of the crime seized incident to the arrest was admissible. Forrester v. State, Okl. Cr., 297 P.2d 418 (1956); Richardson v. State, [97] Okl.Cr. [370], 264 P.2d 371 (1953).

Handley v. State, Okl.Cr., 430 P.2d 830 (1967), cited by the defendant for the proposition that one invalid arrest cannot be made for the purpose of searching for evidence of another crime is not in point. In the *Handley* case, a sheriff's deputy was accompanied by two narcotic agents to arrest the defendant on a warrant for second degree burglary. The defendant had previously been arrested for the same burglary so there was no reason to search his house this second time (the Court of Criminal Appeals assuming that any frutis of the crime would have been search for the first time the defendant was arrested.) It was apparent that the reason for the second burglary arrest was to gain access to defendant's house to search for narcotics, not for any reason connected with the warrant for second degree burglary. The evidence of narcotics found was not admitted on the basis that, "the facts do not constitute a reasonable search incident to the arrest for burglary." Handley v. State, supra at 833. The distinguishing feature between the two cases are that in *Handley* the search for narcotics was not incident to the arrest that could justify the search,

an arrest for burglary. There was no necessity to search for fruits of the burglary arrest, therefore any search was unreasonable. But in the present case the search for fruits of a burglary was incident to the arrest for burglary. It is of no significance in this case that there was no arrest for an ordinance violation before the arrest for the burglary. Since there was a proper arrest for the burglary charge, the search for fruits of this charge was reasonable."

Concerning this objection, the Attorney General states further, which we consider proper:

"If the defendant is objecting to the observance of the merchandise in the defendant's car as the unreasonable search and seizure, instead of the later search of the car assumed to have taken place when the defendant was booked, the issue is not one of search and seizure. The officer saw the goods in the car while making the ordinance arrest. The observance of these articles in plain sight was not a search. Like in the liquor cases during prohibition, the observance of whiskey bottles in a defendant's car was "the commission of the offense in the officer's presence", not a search in itself. Franklin v. State, Okl.Cr., 281 P.2d 204 (1955). By analogy the observance of the fruits of a felony is not a search, but information furnishing probable cause coming freely to the officer without a search. State v. Chronister, Okl.Cr., 353 P.2d 493 (1960)."

Finding this assignment of error without merit, leads us to a consideration of defendant's last proposition that prejudicial and inflammatory evidence was introduced without proper foundation.

■ The evidence to which defendant refers in this assignment of error is evidence which, although not positively identified by Mr. Bates on the basis of serial number, etc., was identified as articles similar to those possessed by him prior to the burglary in question; and, as such one

might deduce that property had been taken and co-mingled with the property which was positively identified. In any event, we fail to see where the admission of this evidence, if error, could prejudice the jury. The element of breaking and entering was clearly established; the intent to commit a felony at the time of his breaking and entering was also established, by the positively identified property in the possession of the defendant at the time of his arrest; and proof of these elements was corroborated by the defendant's voluntary confession connecting him with both the breaking and entering, and the intent accompanying such breaking and entering. Moreover, we observe that the punishment imposed was well within the range provided by law for the offense charged, and less than the maximum that could have been imposed. Consequently, we fail to see how the admission of such evidence could therefore justify a modification or reversal of this case.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.