**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Reginald James CAUSEY, Defendant-Appellant.**

**No. 86–3469.**

United States Court of Appeals, Fifth Circuit.

May 22, 1987.

Rehearing En Banc Granted July 9, 1987.*

*See 822 F.2d 511.

Burton P. Guidry, Baton Rouge, La., for defendant-appellant.

Richard B. Launey, Asst. U.S. Atty., Stanford O. Bardwell, Jr., U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GOLDBERG, RUBIN, and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

City police officers wished to question a suspect about a bank robbery, but lacked probable cause to arrest him. The officers therefore unearthed a seven-year-old warrant charging the suspect with contempt of court by virtue of his failure to appear for trial on a misdemeanor theft charge. They then arrested him, using that charge as a pretext to question him about the robbery. Following their interrogation, the suspect, who had a prior criminal record, decided that he would confess the robbery to federal authorities, to avoid being charged as a multiple offender by state authorities. He then confessed to an agent of the Federal Bureau of Investigation. The government introduced the confession at trial to obtain his conviction on a federal bank-robbery charge.

In 1968, a panel of this circuit held that a confession obtained as a result of a pretextual arrest is inadmissible. In a later opinion, however, another panel of this circuit reached a contrary conclusion. That later opinion is in conflict with the earlier Fifth Circuit authority; the relevant Supreme Court authority also impugns its validity. Adhering to the earlier decision and its more persuasive logic, we hold that the confession is inadmissible. Accordingly, we REVERSE the conviction and REMAND for further proceedings consistent with this opinion.

I.

A man wearing sunglasses and a baseball cap robbed the Capital-Union Savings Bank in Baton Rouge, Louisiana of $1,800 on December 19, 1985. Officer Bart Thompson of the Baton Rouge Police Department and Special Agent James Watson of the F.B.I. began to investigate the crime. The next day, Police Sergeant Sid Newman telephoned Thompson to advise him that the local "CRIME-STOPPERS" had received a telephone call from a female whom Newman described as a reliable source of information. This informant reported that Reginald Causey had committed the bank robbery, provided an address for Causey, and gave a description of Causey's vehicle. Newman did not give Thompson the name of the confidential informant or any information that would support her reliability.

By checking the records of the State Motor Vehicle Registration Bureau, Thompson learned that the described vehicle was not registered as belonging to Reginald Causey but to another person named Causey. The address provided by the informant was that of Reginald Causey's parents. Thompson also obtained an arrest history for Causey. Causey's physical description in the history corresponded with a description provided by a bank teller, and the arrest history indicated that Causey previously had been convicted of bank robbery. Thompson then staked out Causey's parents' house, but neither the vehicle nor Causey appeared.

The next day, Saturday, December 21, Thompson and his partner, Officer Michael Morris, decided that they would "[p]ick [Causey] up for questioning on the bank robbery." They did not plan to arrest him because they did not believe that they had probable cause to do so; the government does not contend that they had probable cause for an arrest. If Causey refused to talk or to accompany the officers to the station, they "were not going to force him into going, at that particular time." FBI Agent Watson did not participate in this plan.

Later that day, Thompson and Morris "started thinking about Reginald Causey and someone thought of looking in" the city court warrant book. They found that a warrant had been issued for Causey's arrest in 1978 for failure to appear in court on a misdemeanor theft charge. The prescriptive period (statute of limitations) for the theft charge had expired, but no such period limited the time within which the failure-to-appear charge might be prosecuted. Because the warrant was for fail-

ure to appear, the defendant would not be able to obtain bail if arrested. Thompson then communicated with the city court judge who had issued the warrant to verify it and to inform the judge that he would arrest Causey sometime during the next week.

The officers' sole reason to make the arrest was to gain the opportunity for custodial interrogation of Causey regarding the bank robbery. This is undisputed. Officer Morris categorically so testified:

Q. Officer Morris, the only thing I wanted to clear is—is that the only reason y'all took [Causey] into custody was to take him downtown and continue your investigation of this bank robbery, is that correct?

A. Yes, sir; our objective is not to serve city court warrants.

Q. I understand that.

A. Yes, sir.

Q. And generally, you don't even fool with those city court warrants?

A. In general; no sir.

Q. So your only purpose in taking Mr. Causey into custody on this bench warrant was an investigatory one?

A. Yes, sir.

On Monday December 23, at 10:30 a.m., the officers located Causey, informed him that he was under arrest on the basis of the failure-to-appear warrant, placed him in their car, read the *Miranda* warnings to him, asked him whether he understood his rights, obtained a statement from Causey that he did, and proceeded towards the police station. The testimony concerning what happened thereafter is conflicting.

Causey contends that, while he was in the car, one of the officers told him " '[Y]ou know that what we picked you up on isn't going to stick.... Well, you know it's not going to stick but you can come off of that. And besides, I want to talk to you about something else.' " The officers, however, denied that they ever thought the warrant was invalid, and denied telling Causey, either at the time of arrest or subsequently, that the warrant " 'wouldn't stand' or that 'there may be some problems with the warrant.' "

At the police station, the police again read the *Miranda* warnings to Causey. They testified that they obtained an oral waiver of his right to counsel. Causey, however, testified that they asked him to authorize them to search his possessions at his parents' house. He testified that he then asked Thompson "could I have— would I be allowed a chance to have an attorney in my presence to help me answer these type of questions which he was asking me." Causey testified that Thompson responded, " 'well, that wouldn't matter because whether [you] gave [me] consent or not, [I] could go through a judge, which would just take a couple of hours longer, get a warrant and [I] would be able to go out and search the house anyway.' "

Causey also testified that Thompson "began to use blackjack statements like, 'The district attorney is going to bring'—'prosecute you and bring forth [the] Habitual Criminal Act, ask for the Habitual Criminal Act, which is'—'which means that'—'an automatic life sentence....' " Causey testified that he denied involvement in the bank robbery, but was pressured to comment on it by statements such as " '[w]ell, we know you did it,' " and " '[w]e feel you did it.' " He added that Lieutenant Ronnie Alford, the supervisor at the station house, later came in and told him,

"From what I hear, they have an armed robbery case against you and it looks bad.... It'll be your third felony conviction and ... the D.A.'s office is definitely going to prosecute and ask for the Habitual Criminal Act.... [Y]ou're going to be found guilty because of your background.... What I recommend to you is that you ... let me call the F.B.I. ... in and you give them a confession and take the matter into federal court. That way, you would only face twenty years instead of [the] Habitual Criminal Act, a life sentence."

According to Causey, Alford promised that, if Causey confessed to the F.B.I., Alford would " 'personally call the D.A.'s office and get them to drop charges of one count of armed bank robbery....' "

Thompson and Morris, however, denied that Causey ever indicated a wish to terminate any interview or questioning, either in the car or in the office; ever asked to speak to a lawyer or to have a lawyer present; ever received any promises or threats; and ever was subjected to coercion. Thompson also denied that he had ever heard the term "habitual offender" used in Causey's presence.

Alford testified that he had discussed only Causey's background, a matter that he routinely discussed with suspects at the station, and had never discussed the bank robbery with Causey. He said that he telephoned the F.B.I. only on Causey's suggestion. Thompson, however, testified that Alford had questioned Causey about the robbery.

Q. But you were talking to him about [the bank robbery]?

A. Correct.

Q. And both you and Officer Morris and Lieutenant Alford and Agent Watson were talking to him about bank robbery?

A. Correct.

In addition, Alford later contradicted his testimony, by stating that he, not Causey, initially suggested calling the F.B.I. The government's memorandum in opposition to the suppression motion admitted this to be true.

At any rate, Alford telephoned F.B.I. Agent Watson, who came to the police station. Watson testified that Alford informed him that Causey wanted to confess to the bank robbery, and that Causey had not yet made any admissions. Watson testified that he then gave Causey a written *Miranda* warning and waiver form, which he also read aloud. He testified that he specifically asked Causey whether any deals had been made with the local officers and whether Causey had received any threats or promises; he said that Causey responded in the negative.

After asking Causey several questions, Watson wrote a confession, which Causey signed between 2:00 and 2:30 p.m. Causey claimed he signed the confession

[t]o get the situation—get the matter out of the state's hands, totally.... Because I'm fully aware of the state system here. And it's a bad situation for a guy in my behalf (sic); background alone could—I mean, evidence doesn't have to be anything in the state system.

At trial, Causey professed his innocence of the charge, claiming that he was babysitting at his parents' house when the robbery occurred. The jury found him guilty of one count of bank robbery, in violation of 18 U.S.C. § 2113(a).

## II.

Prior to trial, in compliance with Federal Rule of Criminal Procedure 12(b)(3), Causey's lawyer moved to suppress Causey's written and oral statements on four grounds: coercion and improper influence; violation of the right to counsel[1]; unlawful detention[2]; and illegal pretextual arrest[3] predicated on the bench warrant, contending both that the arrest was a pretext and that the warrant had prescribed. In his reasons for denying the motion to suppress, the trial judge stated only that the warrant was valid when issued and remained valid until executed.[4]

The trial judge correctly held that the warrant used by the police officers was valid under Louisiana law even though the underlying misdemeanor charge was time-barred, and his conclusion is not seriously challenged on appeal. The government therefore contends that, because the warrant was valid, the officers were under a duty to execute it and thus they acted in

---

1. *Citing Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Citing Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and Fed.R. Crim.P. 5.

3. *Citing Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

4. *Citing State v. Bell,* 334 So.2d 385 (La.1976).

objective good faith and in reasonable reliance on police procedures in effecting the arrest.[5] It is clear that the officers acted in good faith in the sense of believing that the warrant itself was valid.[6] Indeed, they obtained reassurance from the city court judge that it was. They therefore had a legal basis on which to make the arrest, whether or not they believed Causey could still be prosecuted for the underlying crime. This does not, however, answer the fourth amendment question.

## III.

### A.

We turn therefore to the question of whether a confession obtained as a result of an arrest made pursuant to a valid warrant is admissible if the arrest was made solely to enable the police to interrogate a suspect about another, unrelated matter and the arresting officer had no intention that the suspect be prosecuted for the crime on which the arrest was based. The Supreme Court held in *Scott v. United States*[7] that a police officer's admission that he failed to establish any of the criteria for compliance with a statutory mandate to minimize electronic surveillance was irrelevant, because the critical question is "an objective assessment of the officer's actions in the light of the facts and circumstances confronting him at the time."[8] The Court upheld the government's contention that subjective intent alone "does not make otherwise lawful conduct illegal or unconstitutional."[9] In *Scott*, however, "the circumstances, viewed objectively"[10] justified the action taken. This circuit has followed *Scott* recently in two cases. In *United States v. Basey*,[11] we found that an arguably pretextual warrantless arrest for failure to carry automobile insurance did not violate the fourth amendment, because the district court found that the arrest was effected in good faith and because the Texas enforcement scheme necessarily contemplated investigatory stops for unrelated crimes. In *United States v. Johnson*,[12] we found that an arguably pretextual inventory search following an arrest pursuant to an out-of-state warrant did not violate the fourth amendment, because the district court found that there had been no pretext and because the Secret Service possessed a legitimate interest in effecting the suspect's arrest.

A different situation is presented here. The police knew that they lacked probable cause to make an arrest for bank robbery, and the government does not assert that they had probable cause. The arrest on the bench warrant was not made in the course of routine police activity nor in accordance with internal police policies.[13] The Supreme Court has said in earlier cases that its decision in *United States v. Robinson*,[14] upon which *Scott* relied,[15] was influenced by the fact that there was "no suggestion whatever that this standard

5. *Citing Hill v. Bogans,* 735 F.2d 391, 393 (10th Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982)); *Smith v. Gonzales,* 670 F.2d 522 (5th Cir.1982).

6. *Cf. United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424 (1984); *United States v. Gant,* 759 F.2d 484, 487 (5th Cir.1985).

7. 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), *reh. denied,* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

8. *Id.* at 137, 98 S.Ct. at 1723.

9. *Id.* at 136, 98 S.Ct. at 1723 (footnote omitted).

10. *Id.* at 138, 98 S.Ct. at 1723.

11. 816 F.2d 980, 990–91 & n. 19 (5th Cir. 1987).

12. 815 F.2d 309, 314–16 (5th Cir.1987).

13. *See, e.g.,* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.2(e), at 460 & n. 110 (2nd ed. 1987) [hereinafter cited as Search and Seizure]; 1 Search and Seizure § 1.4(e), at 93–97; A. Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 373 & nn. 238–42, 417, 434–37 (1974); Mendelson, *Arrest for Minor Traffic Offenses,* 19 Crim. L.Bull. 501, 503–07 (1983).

14. 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

15. 436 U.S. at 138, 98 S.Ct. at 1723.

procedure ... was a pretext concealing an investigatory police motive."[16] Instead, we are confronted with the question reserved "for another day" by the Court in *Robinson:* the result that would obtain if a police officer "used the subsequent traffic violation arrest as a mere pretext...."[17]

The arrest, and hence the seizure, of Causey could not have been objectively reasonable, because the objective facts and circumstances would not have justified any officer in making the arrest. The arrest was made only to avoid operation of the fourth amendment. Without the warrant that enabled them to place Causey in the inherently coercive atmosphere of the stationhouse, the police officers admittedly would not and should not have arrested him, and thus might never have been able to question him about the bank robbery.[18] Absent that warrant, the investigatory arrest and subsequent detention would have violated the fourth amendment.[19] Thus, as the Supreme Court has said, this pretextual use of the warrant "indeed reveal[s] a serious misconduct by law-enforcing officers. The deliberate use by the Government of a[ ] ... warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts. The preliminary stages of criminal prosecution must be pursued in strict obedience to the safeguards and restrictions of the Constitution and laws of the United States."[20]

Further, if the police make an arrest or detain a suspect as a pretext to conduct a search for which probable cause is lacking, or if the search incident to the arrest is overextensive, the subsequent search is unconstitutional.[21] The government seeks to distinguish the cases so holding from the instant case because they are based on a subsequent search involving the fourth amendment, not on a post-arrest interrogation, after *Miranda* warnings were given, involving the fifth amendment.

This indeed is a distinction without a difference. The illegality of the initial police conduct is decisive, regardless whether the police thereafter conduct a search or a custodial interrogation. The Supreme Court explicitly stated in *Brown v. Illinois,*[22] and reiterated in *Dunaway v. New York,*[23] that a violation of the fourth amendment by an arrest without probable cause is not automatically cured by the later provision of *Miranda* warnings and a subsequent voluntary confession. The primary taint is the violation of the fourth amendment by the unlawful arrest, the continuing effect of which is to make the confession inadmissible. Whether a subsequent fifth amendment violation occurred is a conceptually distinct issue.

Moreover, the only reason to make a pretextual arrest to interrogate is to exert the coercion of custodial questioning to elicit information unavailable by an interview

**16.** *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *see Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973); *cf. Brown v. Illinois,* 422 U.S. 590, 622, 95 S.Ct. 2254, 2264, 45 L.Ed.2d 416 (1975) (Powell, J., concurring).

**17.** 414 U.S. at 221 n. 1, 94 S.Ct. at 470 n. 1. The Supreme Court granted a writ of certiorari in *Missouri v. Blair,* — U.S. —, 106 S.Ct. 784, 88 L.Ed.2d 762 (1986), a case that might have presented this issue, but later dismissed the writ as improvidently granted. — U.S. —, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987).

**18.** *Cf. Arizona v. Hicks,* — U.S. —, —, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987); 1 Search and Seizure, *supra* note 13, § 1.4(e).

**19.** *See, e.g., Dunaway,* 442 U.S. at 218–19, 99 S.Ct. at 2260; *Taylor v. Alabama,* 457 U.S. 687,

693, 102 S.Ct. 2264, 2268–69, 73 L.Ed.2d 314 (1982).

**20.** *Abel v. United States,* 362 U.S. 217, 226, 80 S.Ct. 688, 690, 4 L.Ed.2d 668 (1960).

**21.** *See, e.g., Hayes v. Florida,* 470 U.S. 811, 812–19, 105 S.Ct. 1643, 1645–48, 84 L.Ed.2d 705 (1985); *Davis v. Mississippi,* 394 U.S. 721, 725–28, 89 S.Ct. 1394, 1396–98, 22 L.Ed.2d 676 (1969); *United States v. Lefkowitz,* 285 U.S. 452, 462–67, 52 S.Ct. 420, 422–24, 76 L.Ed. 877 (1932); *see also Amador-Gonzales v. United States,* 391 F.2d 308, 313–18 (5th Cir.1968); *cf. Mills v. Wainwright,* 415 F.2d 787, 790 (5th Cir.1969); *Taglavore v. United States,* 291 F.2d 262 (9th Cir.1961).

**22.** 422 U.S. at 600–04, 95 S.Ct. at 2260–62.

**23.** 442 U.S. at 216–19, 99 S.Ct. at 2258–60.

on a purely voluntary basis.[24] Such an arrest presents concerns identical to those that arise when the police, lacking probable cause, arrest a suspect solely in order to search him, and then use the evidence obtained from the search either directly or to extract a confession.[25] The degree of intrusiveness of an arrest made as a pretext to question is not less than the degree of intrusiveness of an arrest made as a pretext to search. In each case, a suspect is unlawfully deprived of his freedom and detained so that the police may pursue an ulterior motive. We refuse to decide that the right to be free from unwarranted searches [26] is either less or more important to society as a whole than the right to walk away from interrogating officers.[27]

## B.

■ In *Amador-Gonzalez v. United States*,[28] a panel of this court held that a confession obtained as a result of a search, conducted after the pretextual arrest of the defendant for a minor traffic offense, was procured in violation of the fourth amendment and must be suppressed. Notwithstanding, six years later in *United States v. Cavallino*,[29] another panel, without referring to *Amador-Gonzalez*, refused to suppress evidence obtained by interrogating a defendant taken into custody through a substantially similar pretextual arrest. The police officers' superior had directed them to follow Cavallino; to arrest him when he committed any kind of traffic violation, however minor; and then to interrogate him about another offense. The panel held that a confession to the major offense, obtained as a result of that questioning, was admissible.

*Cavallino* permits the police intentionally to conjure up some pretext to arrest a person and to use that arrest to conduct an interrogation that the fourth amendment would otherwise prohibit. The holding thus unintentionally encourages the development of police-state processes, whereby overzealous officers are permitted to exploit any possible violation of some misdemeanor statute in order to incarcerate citizens without regard for the individual's freedom, the seriousness of the violation, or the ability of the government to demonstrate a more serious criminal violation.

*Cavallino* also is in conflict with our pretextual-search decisions, and with our decisions holding unconstitutional warrantless, pretextual arrests which are made for offenses unrelated to the crime for which the arrestee is subsequently charged and which are used to investigate or interrogate the arrestee.[30] Although it was not persuasively distinguishable from the pretextual-arrest-to-search cases decided by our court and by the Supreme Court, *Cavallino* did not refer to those cases. In

---

24. *Cf. Brown*, 422 U.S. at 609–10, 95 S.Ct. at 2265 (Powell, J., concurring).

25. *See Davis*, 394 U.S. at 723–24, 89 S.Ct. at 1396; *Fahy v. Connecticut*, 375 U.S. 85, 91, 84 S.Ct. 229, 232, 11 L.Ed.2d 171 (1963).

26. *See* note 21 *supra*.

27. *See Hayes*, 470 U.S. at 815, 105 S.Ct. at 1647 (citing *Dunaway*, 442 U.S. at 212, 99 S.Ct. at 2256); *see also Mallory v. United States*, 354 U.S. 449, 456, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479 (1957) ("It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'"); *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1927) (Brandeis, J., dissenting); *cf. Hicks*, — U.S. at —, 107 S.Ct. at 1154 (equal justification required for reasonableness of searches and seizures).

28. 391 F.2d 308 (5th Cir.1968).

29. 498 F.2d 1200 (5th Cir.1974).

30. *See, e.g., United States v. Atkinson*, 450 F.2d 835, 838–41 (5th Cir.1971) (explaining *United States v. Seay*, 432 F.2d 395 (5th Cir.1970), *cert. denied sub nom. McGee v. United States*, 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971)), *cert. denied*, 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972); *United States v. Fossler*, 597 F.2d 478, 482 (5th Cir.1979); *Moffett v. Wainwright*, 512 F.2d 496, 504 (5th Cir.1975); *United States v. Saunders*, 476 F.2d 5, 7 & n. 3 (5th Cir.1973); *Chaney v. Wainwright*, 460 F.2d 1263, 1264 (5th Cir.1972); *United States v. Hathorn*, 451 F.2d 1337, 1342 (5th Cir.1971) (on petition for rehearing and petition for rehearing en banc); *cf. United States v. Kilgen*, 445 F.2d 287, 289 (5th Cir.1971); *Trejo v. Perez*, 693 F.2d 482, 485–86 (5th Cir.1982); *but cf. Basey, supra* note 11.

fact, *Cavallino* is an aberration, and has not been cited for the pretextual-arrest proposition by other federal authority. In contrast, *Amador-Gonzalez*[31] initiated a continuing line of Fifth Circuit authority holding pretextual arrests unconstitutional.[32]

*Amador-Gonzalez*, and not *Cavallino*, provides the proper precedent, and its reasoning is more consistent with the decisions of this circuit and those of the Supreme Court. Because we cannot simultaneously be bound by conflicting authority, we are constrained to follow the earlier and more sound reasoning of *Amador-Gonzalez*. We therefore conclude that Causey's fourth amendment rights were violated by his arrest.

### IV.

Not all evidence obtained as a result of an unconstitutional search or arrest need be suppressed.[33] As the Supreme Court held in *Wong Sun v. United States*,[34] the "question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "[35]

*Brown v. Illinois*[36] requires us to analyze four factors to assess causal-taint attenuation. These are "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances ...

and, particularly, the purpose and flagrancy of the official misconduct.... The voluntariness of the statement is, of course, a threshold requirement."[37] The recitation of *Miranda* warnings is to be considered in the taint-attenuation inquiry, but is not dispositive.[38] Instead, the totality of the circumstances must be investigated in each case to determine whether the subsequent confession is still tainted for fourth amendment, not fifth amendment, purposes.[39]

■ Although the city police officers gave Causey two sets of oral *Miranda* warnings and F.B.I. Agent Watson gave him a written *Miranda* waiver form, these intervening factors are not sufficient by themselves to cure the taint. The purpose of the city police officers in effecting the illegal arrest amounted to a "flagrantly abusive violation of Fourth Amendment rights ... [not] a 'technical' Fourth Amendment violation."[40] Save for the fact that the confession was obtained by Watson rather than by Officers Thompson and Morris, the police plan proceeded precisely as contemplated and the pretext resulted in the hoped-for confession to the bank robbery. Under these circumstances, in order to effectuate the deterrent purposes of the exclusionary rule, there must be substantially greater evidence of attenuating factors to warrant finding the fourth amendment violation to be causally remote.[41]

Causey was continuously interrogated until he agreed to confess, was confined to

**31.** 391 F.2d 308 (5th Cir.1968).

**32.** *See, e.g., United States v. Cruz*, 581 F.2d 535 (5th Cir.1978) (en banc), *reh. denied*, 587 F.2d 277 (5th Cir.1978) (en banc); *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir.1976) (en banc).

**33.** *See* 4 Search and Seizure, *supra* note 13, § 11.4; Lewis, The Fourth Amendment and Tainted Confessions: Admissibility as a Policy Decision, 13 Houston L.Rev. 753 (1976) (student author).

**34.** 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**35.** *Id.* at 488, 83 S.Ct. at 417 (quoting J. Maguire, Evidence of Guilt 221 (1959)).

**36.** 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

**37.** *Id.* at 603–04, 95 S.Ct. at 2261–62 (footnotes and citations omitted).

**38.** *Id.* at 603, 95 S.Ct. at 2261.

**39.** *United States v. Cherry*, 794 F.2d 201, 206 (5th Cir.1986) (Cherry III) (citing *United States v. Cherry*, 759 F.2d 1196, 1211 (5th Cir.1985) (Cherry II)), *cert. denied*, —— U.S. ——, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987).

**40.** *Brown*, 422 U.S. at 610, 95 S.Ct. at 2265 (Powell, J., concurring).

**41.** *See id.* at 611, 95 S.Ct. at 2265.

the police station,[42] and confessed within four hours of the arrest.[43] The only putatively relevant intervening factors between arrest and anticipated confession were the *Miranda* warnings and the arrival of the federal agent. There was no break in interrogation. Alford admitted that he had initiated the idea of calling in the F.B.I. Thus, as in *Dunaway v. New York,*[44] in which the Supreme Court suppressed an unconstitutionally obtained confession, Causey was "seized without probable cause [for the bank robbery offense] in the hope that something might turn up, and confessed without any intervening event of significance."[45]

Considering all these factors, we conclude that the deterrent rationale of the fourth amendment will not be served unless the confession is suppressed. The federal officer did not participate in the scheme to evade the fourth amendment, but the evidence obtained by him was derived from the state officers' ploy. The Supreme Court has rejected the silver-platter doctrine, preventing the federal use of evidence obtained by state officials through intentional and unconstitutional means and exploited by the state officials by serving it up to federal agents.[46] Neither the repeated *Miranda* warnings nor the arrival of a different police force constitutes a sufficient intervening factor to purge the fourth amendment taint from the confession. As we have previously stated, a consent "secured through an exploitation of the illegal arrest ... is undoubtedly inadmissible."[47] The *Miranda* waiver and subsequent confession were secured by exploitation of the pretextual arrest. The confession is therefore inadmissible.

## V.

The government now contends that Causey's counsel waived all but the pretextual arrest and warrant validity issues at the suppression hearing. The only mention at the suppression hearing of those other, putatively waived issues occurred in two inconclusive colloquys. At the trial, moreover, Causey's counsel objected to admission of the *Miranda* warning and waiver form. The court then stated: "all of your previous objections, of course, will be [p]reserved."

Because of our disposition of the pretextual arrest issue, we express no opinion as to whether Causey waived those claims,[48] and whether, if he did waive them, the district court should have reconsidered the suppression ruling *sua sponte.*[49] Similarly, we express no judgment on the merit of those claims.

## *Conclusion*

This is not a case in which the criminal goes free simply because the constable blundered.[50] Although Causey may indeed be a criminal, the evidence obtained from him is not the result of a mere blunder. The police deliberately set out to interrogate him by employing a method that violated his constitutional rights. The evidence thus obtained is as tainted as if it had been obtained by coercion, brutality, or

**42.** *Cf. Westover v. United States,* 384 U.S. 436, 496–97, 86 S.Ct. 1602, 1639, 16 L.Ed.2d 694 (1966); *Brown,* 422 U.S. at 610, 95 S.Ct. at 2265 (Powell, J., concurring).

**43.** *Compare Brown* (two hours, suppressing confession) *with Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (forty-five minutes, not suppressing verbal admission because of noncoercive environs).

**44.** 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

**45.** *Id.* at 218, 99 S.Ct. at 2260.

**46.** *See Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

**47.** *United States v. Wilson,* 569 F.2d 392, 396 (5th Cir.1978); *see Phelper v. Decker,* 401 F.2d 232, 236–38 (5th Cir.1968).

**48.** *See, e.g., United States v. Hammond,* 605 F.2d 862, 863 (5th Cir.1979) (on petition for rehearing).

**49.** *See, e.g., United States v. Montos,* 421 F.2d 215, 220 (5th Cir.1970), *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970).

**50.** *People v. Defore,* 242 N.Y. 13, 150 N.E. 585, 587 (1926) (Cardozo, J.), *cert. denied,* 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926).

any other unconstitutional lever utilized to pry a confession from him. We deprive the government only of the right to profit by what was derived from the city police officers' violation of Causey's constitutional rights. Any evidence properly obtained can still be used against him.

For these reasons, the decision of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.