Ronald Glen LYONS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–364.

Court of Criminal Appeals of Oklahoma.

Dec. 28, 1989.

As Corrected Jan. 12, 1990.

Rehearing Denied March 20, 1990.

Greg A. Farrar, Tulsa, Okl., for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma, Susan Stewart Dickerson, Asst. Atty. Gen., Lee S. McIntire, Legal Intern, Oklahoma City, Okl., for appellee.

OPINION

LUMPKIN, Judge:

Appellant Ronald Glen Lyons was convicted in a non-jury trial in the District Court of Tulsa County of Cultivation of Marijuana (63 O.S.1981, § 2–509(1)), Unlawful Possession of Controlled Drug (63 O.S. 1981, § 2–402(B)(1)) and Unlawful Possession of Marijuana, Second Offense (63 O.S. 1981, § 2–402(B)(2)) in Case No. CRF–86–4182; and three counts of Soliciting Minor for Lewd Photograph (21 O.S.1981, § 1021.2) and two counts of Possession of Obscene Photographs of a Minor (21 O.S. 1981, § 1021.2) in Case No. CRF–86–4189. Appellant was sentenced to nine (9) years imprisonment on each count, said sentences to run concurrently. From this judgment and sentence, Appellant appeals. We affirm.

At approximately 7:20 p.m. on November 19, 1986, Officers Whitlow and Boergerman of the Tulsa Police Department executed a bench warrant issued by the Municipal Court of the City of Tulsa. Pursuant to departmental policy, Whitlow and Boergerman, plainclothes officers, obtained the assistance of uniformed Officer Aldrich in the service of the warrant. After knocking on the front door and receiving a response by the Appellant, the officers identified themselves and advised Appellant that they had a warrant for his arrest. Upon an invitation by Appellant, the officers entered Appellant's home and told him that he needed to accompany them downtown. The bare-footed Appellant asked if he could get his shoes before leaving the house. Acquiescing in Appellant's request, Officer Whitlow followed Appellant from the foyer into the living room. While waiting for Appellant to retrieve his shoes, Whitlow noticed a baggie of marijuana on the coffee table. Whitlow proceeded to place Appellant under arrest for possession of marijuana. Appellant subsequently waived his *Miranda* rights and consented to a search of his residence. He directed officers to cocaine lying on the coffee table and other drugs in the dining room and bedroom. Officer Boergerman called for assistance and for the evidence kit to be brought to the scene. Officer Odom and Sergeant York subsequently arrived and discovered a handbook on growing marijuana, marijuana both loose and in small bundles, several empty vials and approximately $2,020.00 in cash rolled into a ball and secured with a rubber band. Approximately 30 marijuana plants were found in the basement. While searching the dining room, officers discovered polaroid photographs of partially and completely nude females who appeared to be under the age of eighteen. Because of the pornographic nature of the photographs, the search was discontinued until a search warrant could be issued. Appellant was transported to the police station while the search warrant was being obtained. The search was later continued pursuant to the warrant and revealed further amounts of marijuana and related paraphernalia and pornographic materials.

In his first assignment of error, Appellant contends that his arrest on a municipal bench warrant was a subterfuge to gain entrance to his home in order to search for evidence of other offenses, specifically illegal drugs, without having the benefit of a search warrant. In support of his proposition Appellant directs this Court's attention to four cases, each from a different court, wherein it was held that the arrest was merely a pretext for an unlawful search. *See United States v. Causey,* 818 F.2d 354 (5th Cir.1987),

*McKnight v. United States,* 183 F.2d 977 (D.C.Cir.1950), *Harding v. State,* 301 So.2d 513 (Fla.App.1974), and *Handley v. State,* 430 P.2d 830 (Okl.Cr.1967). A review of these cases reveals that in evaluating alleged violations of the Fourth Amendment the relevant test is whether the search was reasonable under the facts and circumstances of the case. In upholding the Appellant's claim in *Causey,* the Fifth Circuit relied on *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), wherein the United States Supreme Court stated that the critical question is an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time. The subjective intent alone does not make otherwise lawful conduct illegal or unconstitutional. 818 F.2d at 358. A review of the facts of each of the cases cited by Appellant reveals situations wherein the arrest was clearly made to avoid operation of the Fourth Amendment. In *Causey,* a police officer testified that the sole reason for arresting the defendant on a seven year old warrant for failure to appear for a misdemeanor charge was to gain the opportunity for custodial interrogation of the defendant regarding a bank robbery. In *McKnight,* officers rejected an opportunity to arrest the defendant on a public street for carrying on a lottery, and instead waited until he entered a house, for which they had no search warrant, in order to seize evidence they hoped to find. In *Harding,* officers went to the defendant's house to arrest another individual with the clear knowledge that the defendant was involved in the local drug scene.

In *Handley,* the only case from this Court cited by Appellant, county sheriff's deputies, accompanied by two State Narcotic Agents, attempted to serve the defendant with an arrest warrant for the offense of second degree Burglary. As the officers approached the door to serve the warrant, they could see the defendant and his wife run into the bathroom and then return to the front door to admit the officers. Upon entering the house, the officers immediately went to the bathroom to see what had been hidden by the defendant and found drug paraphernalia. The narcotics officers then proceeded to crawl underneath the house and discovered a fruit jar containing morphine. This Court held that the facts did not constitute a reasonable search incident to the arrest for burglary. We stated that the conduct of the officers showed that the arrest warrant was a subterfuge for gaining entrance to the house and searching the premises without obtaining a search warrant. The Court specifically noted the pertinent facts resulting in that conclusion: the presence of State Narcotics Agents to serve a warrant for burglary, that the warrant was not one in which the officers would have been looking for evidence to support the burglary charge (as the defendant had been previously arrested on the same charge and it was assumed that the state had previously found the evidence for the burglary charge), and that the narcotics agents "miraculously discover[ed]" the fruit jar buried underneath the house. *Id.* at 832–833. This Court concluded that the proper test of a reasonable search and seizure is based upon the entire factual situation. In each case, the trial judge must determine whether the officers went to the place to make a lawful arrest, and in making it, looked for evidence lawfully subject to seizure or whether the officers used a pretended arrest for one offense as a "trojan horse" in order to obtain entry, only to prosecute for some greater crime after finding sufficient evidence to justify their belief in greater crime. *Id.* at 834.

Turning to the present case, Officer Whitlow, the arresting officer, testified that he received a tip that Appellant was growing marijuana in his basement. Whitlow and Boergerman proceeded to investigate the tip but did not uncover any evidence to suggest that the information they had received was true. This investigation included driving past Appellant's home four or five times looking for signs of narcotic activity. Finding none, the officers completed the investigation by running a records check of Appellant's address which revealed an outstanding municipal warrant. As a matter of procedure to com-

plete their investigation, the officers served the warrant. Unclear of where Appellant worked, the officers served the warrant at his home. Both officers testified that the warrant was served not to further the investigation of Appellant regarding drug charges, but to complete the investigation by serving an outstanding warrant. Whitlow testified that at the time he served the warrant, he did not intend to search the house. The officers also testified that it was the duty of any Tulsa Police Officer, regardless of their particular division, to serve any outstanding warrants that came to their attention. Whitlow added that the failure to serve a known warrant is a misdemeanor charge. He further testified that it was the policy of the Tulsa Police Department to have a uniformed officer accompany any plainclothes officer serving a warrant. An objective assessment of these facts and circumstances show that the action taken was justified. The officers served the warrant in a good-faith effort to complete their investigation of the tip. The entry into Appellant's house was at his invitation and the facts of this case are clearly distinguishable from the facts in *Handley*. The trial court properly determined that the warrant was served in the course of routine police activity and in accordance with internal departmental policies. Appellant's failure to dispute the validity of the municipal warrant renders irrelevant any inquiry in the officers' above referenced alleged ulterior motivation. *See United States v. Basey*, 816 F.2d 980, 991 (5th Cir.1987). Finding no error in the officers serving of the municipal warrant, we refuse to reverse on this assignment of error.

■ In his second assignment of error, Appellant contends that the officers' observations and subsequent seizure of the marijuana did not amount to a reasonable search under the "plain view" exception to the Fourth Amendment. The record reflects that Officer Whitlow testified that upon arriving at Appellant's door and informing him of their purpose, the Appellant asked the officers "Can we talk about this", and motioned for them to come inside. Appellant then asked if he could post bond with the officers. Upon being told that was not possible and that he would have to go downtown to post bond, Appellant asked if he could get a pair of shoes to cover his bare feet. Whitlow followed Appellant from the foyer into the living room, despite Appellant's protests. Whitlow testified that in his mind Appellant was under arrest on the warrant as soon as he answered the door. For security reasons and pursuant to department policy, he accompanied the Appellant until he was secured at the police department. Whitlow testified that as he was waiting for Appellant to retrieve his shoes, he noticed what appeared to be a baggie of marijuana on the table. Whitlow then placed the Appellant under arrest for possession of marijuana. Appellant testified in his own behalf at the suppression hearing, giving a different version of events. Appellant stated that he did not in any way invite the officers into his house. Rather, they forced their way in without informing him of their purpose and asked only if there was anyone else in the house. Appellant stated that the officers walked through the house until they found a baggie of marijuana in the sunroom. He said that there were several pairs of shoes by the front door, therefore there was no need for the officers to enter the living room.

The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *Washington v. Chrisman*, 455 U.S. 1, 6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982). This exception applies if it is shown that: (1) the police were legitimately in a position to obtain the view; (2) the object was in plain view; (3) the incriminating nature of the article was readily apparent; and (4) the discovery of the article was inadvertant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *Fritz v. State*, 730 P.2d 530, 533 (Okl.Cr.1986), *Teeman v. State*, 664 P.2d 1071, 1073 (Okl.Cr.1983). In the present case, Officer Whitlow had placed Appellant under lawful arrest, and therefore was authorized to accompany

him to the living room for purposes of retrieving his shoes. *Washington v. Chrisman,* 455 U.S. at 7, 102 S.Ct. at 816. As he waited for Appellant, the officer inadvertantly observed the baggie on the coffee table. Due to his training and experience, he recognized it as a controlled drug. "This is a classic instance of incriminating evidence found in plain view when a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual's area of privacy. The Fourth Amendment does not prohibit seizure of evidence of criminal conduct found in these circumstances." *Id.* at 455 U.S. at 10, 102 S.Ct. at 818. Although disputed by the Appellant, we find the evidence supports a finding that the search meets the requirements of the "plain view" exception. Therefore, the marijuana was properly admitted into evidence and this assignment of error is denied.

In his final assignment of error, Appellant contends that the consent to search his residence was not voluntarily given, but was the result of coercion and duress. Appellant testified at the suppression hearing that the waiver was obtained in the presence of three police officers, two of which had firearms in view. Although the firearms were not drawn, Appellant stated that he felt threatened. He testified that he was not told that he was under arrest until he was handcuffed by the officers. Appellant further stated that he was asked by the officers if he wanted to make a deal and was told that if he did not consent to a search of his home, the officers would be there all night and would thoroughly search his house regardless. Appellant stated that he thought the officers initial intrusion into his home was illegal, but consented to the search out of ignorance and fear. On cross-examination, Appellant admitted that he was an educated person, having a degree in education, who had taught courses in "street law" at the high school. Once again, the Appellant's evidence presented a very different picture than that presented by the State. Officer Whitlow testified that after the Appellant was placed under arrest for possession of marijuana, he was handcuffed and read his *Miranda* rights. Appellant acknowledged

understanding of the rights and voluntarily waived them, agreeing to talk with the officers. When asked if there were more drugs in the house, Appellant directed the officers to cocaine on the coffee table. Whitlow then asked Appellant if he would consent to a search of his home. Upon Appellant's verbal consent, Whitlow left the house momentarily to retrieve a waiver of search form from his unit. Officers Boergerman and Aldrich remained with Appellant but did not engage in any conversation. The consent to search form was then read to Appellant, and upon indicating that he understood, Appellant signed the waiver. He then admitted that there were drugs in the dining room and the bedroom. Officer Boergerman subsequently answered Appellant's questions concerning when he would be able to return to work.

As the trial court so aptly stated in ruling on the Appellant's motion to suppress, this case is a "standard swearing match". The legal rulings in this case are inseparably intertwined with the facts. This Court has repeatedly held that the question of voluntariness is a question of fact to be determined from all the circumstances. *Sullivan v. State,* 716 P.2d 684, 687 (Okl. Cr.1986). We refuse to reverse a trial court's determination of voluntariness where there is competent evidence reasonably tending to support the judge's findings. *See Isom v. State,* 646 P.2d 1288, 1291 (Okl.Cr.1982). Here, the police denied any coercion or deception. Moreover, Appellant's conduct indicates his consent to the search was free and voluntary. Accordingly, this assignment of error is denied.

Finding no error, Appellant's judgment and sentence is

AFFIRMED.

JOHNSON, J., and LANE, V.P.J., concur.

PARKS, P.J., concurs in result.

BRETT, J., dissents.